IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| RICHARD S. TWETE,<br><br>             Plaintiff,<br><br>vs.<br><br>CLINTON RAY MULLIN, JR.,<br>A & C SOARING EAGLE<br>TRUCKING, INC., ZACHARY<br>MULLIN, DOES 1-20,<br><br>            Defendants. | CV 19-144-BLG-SPW<br><br><br>ORDER |

Before the Court is the Defendants' motion to dismiss the complaint (Doc. 10) under Federal Rule of Civil Procedure 12(b)(6) and 9(b).  For the following reasons, the motion is denied.

## I.    Facts alleged in the complaint

In September of 2012, Richard Twete conveyed his North Dakota farm to his friend Clint Mullin on agreement that Mullin would reconvey the property to Twete on demand.  (Doc. 1, ¶ 10).  Without telling Twete, Mullin sold the farm's mineral rights for $600,000 in April 2013 and deposited most of the money into the bank account of A&C Soaring Eagle Trucking, a corporation owned and operated by Mullin.  (Doc. 1, ¶¶ 1, 11).  In July 2013, Mullin mortgaged the farm for

1

$500,000 and deposited the money into A&C's account. (Doc. 1, ¶ 13). In August 2014, Mullin mortgaged the farm again, this time for $1,000,000. (Doc. 1, ¶ 14). Just as he did previously, Mullin deposited the money into A&C's account. (Doc. 1, ¶ 14).

In February 2015, Twete sued Mullin and others for breach of trust for selling the farm's mineral rights and encumbering the farm. (Doc. 1, ¶ 15). The case proceeded to trial in April 2017, where the jury returned a special verdict in Twete's favor for $2,550,000. (Doc. 1, ¶ 15.) Twete asked the judge to order equitable relief in the form of Mullin arranging for the release of the mortgages and the return of the farm. (Doc. 1, ¶ 16). The judge granted the request but Mullin did not get the mortgages released. (Doc. 1, ¶ 16). In October 2017, judgment was entered against Mullin for $1,812,205.32. (Doc. 1, ¶ 17).

In order to satisfy the judgment, the judge allowed Twete to conduct post-judgment discovery on Mullin and his assets.

Up to that point, Mullin had repeatedly stated, represented, or otherwise led Twete and others to believe that Mullin was the sole owner and operator of A&C. (Doc. 1, ¶ 52). Mullin's tax returns listed Mullin as the sole shareholder of A&C. (Doc. 1, ¶ 28). Mullin's accountant believed he was the sole shareholder. (Doc. 1, ¶ 29). In multiple lawsuits, Mullin and his son testified or represented Mullin was the sole shareholder of A&C, including *Fitterer Sales Montana v. Clint Mullin and*

2

*A&C Soaring Eagle Trucking, Inc.,* Montana Seventh Judicial District Court, Richland County, DV 09-84; *A&C Soaring Eagle Trucking, Inc., et al. v. Buhler Industries, Inc., et al.*, CV 12-139-BLG-RFC-CSO (D. Mont 2012); and *A&C Soaring Eagle, et al v. AGCO Finance, LLC et al.*, Montana Thirteenth Judicial District Court, Yellowstone County, DV 12-1600. Mullin had even testified in Twete's lawsuit against him that he was the sole shareholder of A&C. (Doc. 1, ¶ 36).

When Mullin twice mortgaged the farm, he represented to the lenders that he owned A&C. (Doc. 1, ¶¶ 37-40). In 2017, Mullin obtained a loan for $20,000 and again represented he owned A&C. (Doc. 1, ¶ ¶41-42).

Mullin's actions indicated he owned and controlled A&C. Mullin regularly deposited personal funds into A&C's accounts, including the money from the farm's mineral interests and the money from the mortgages. Mullin also regularly withdrew money from A&C's accounts. A&C funds paid for Mullin's personal, medical, legal, and life insurance expenses. (Doc. 1, ¶ 51).

However, despite all of Mullin's prior statements and actions, when Twete conducted post judgment discovery in February 2018, Mullin asserted for the first time that he did not own any part of A&C because he had transferred all the shares to his son back in 2008. (Doc. 1, ¶¶ 52-53). Mullin then filed for bankruptcy and was found insolvent. (Doc. 1, ¶ 59).

3

Twete filed this action based on the damages incurred because of the inability to collect on the North Dakota judgment due to Mullin's alleged fraudulent conduct. The complaint alleges the corporate veil must be pierced because A&C is Mullin's alter ego (Count 1), Mullin is the equitable owner of A&C (Count 2), fraud (Count 3), constructive fraud (Count 4), conspiracy to defraud (Count 5), and fraudulent transfer (Count 6).

## II.    Legal standard

A motion to dismiss for failure to state a claim is governed by Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Claims sounding in fraud or mistake are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that such claims "state with particularity the circumstances constituting fraud or mistake." This includes "the who, what, when, where, and how of the misconduct charged." *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (citation

4

omitted).  In fraud cases, plaintiffs "must set forth what is false or misleading about a statement, and why it is false." *Becerra*, 945 F.3d at 1228.  The allegations of fraud "must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged." *Becerra*, 945 F.3d at 1228.

## III.  Discussion

The defendants argue Counts 1, 2, and 6 fail to state a claim upon which relief can be granted under Rule 12(b)(6), and Counts 3, 4, and 5 fail to state with particularity the circumstances constituting fraud under Rule 9(b).

### A.    Count 1: Mullin is A&C's alter ego

To pierce the corporate veil, the plaintiff must show the defendant was either the alter ego, instrumentality, or agent of the corporation. *Lane v. Montana Fourth Judicial Dist. Court*, 68 P.3d 819, 824 (Mont. 2003) (citation omitted).  Second, the plaintiff must show the corporate entity was used as a "subterfuge to defeat public convenience, justify wrong, or perpetuate fraud." *Lane*, 68 F.3d at 824.

Here, the complaint sufficiently alleges Mullin was the alter ego of A&C. The complaint contains a laundry list of actions and statements which, taken as true, tend to show Mullin and A&C were/are interchangeable, including the commingling of funds while also representing that Mullin was the sole shareholder of A&C.

5

The complaint also sufficiently alleges Mullin used/is using A&C to justify wrong and perpetuate fraud. The complaint alleges that for years Mullin represented to everyone, including Twete in Twete's lawsuit against Mullin, that Mullin was the sole shareholder of A&C. When Mullin was faced with a $1.8m judgment with the possibility that collection would be enforced against A&C's assets, some of which were obtained when Mullin leveraged the farm and deposited the proceeds into A&C's account, he suddenly changed his story and claimed for the first time that actually he did not own A&C because he had transferred all his shares to his son over a decade prior. Taken as true, the complaint's allegations plausibly claim Mullin used A&C for fraudulent purposes.

**B.    Count 2: Mullin is the equitable owner of A&C**

In the alternative, Twete alleges equity demands that Mullin is the owner of A&C. The Montana Supreme Court has recognized that piercing the corporate veil is an equitable remedy the application of which depends on the circumstances of each case. *Hando v. PPG Indus., Inc.*, 771 P.2d 956, 960 (Mont. 1989). As such, the two step test in *Lane* is not always a clean fit. In some cases, it is more appropriate to consider a range of factors which, under principles of equity, demand the corporate veil be pierced. *Hando*, 771 P.2d at 960. No concrete formula exists; piercing the corporate veil is an equitable remedy used to curb

6

injustices resulting from the improper use of a corporate entity. *Hando*, 771 P.2d at 960.

Here, the complaint plausibly claims that equity dictates Mullin is the owner of A&C. The complaint alleges Mullin repeatedly represented to creditors and potential creditors, including Twete, that he was the sole shareholder of A&C. The complaint also alleges Mullin had dominion and control over A&C's affairs and assets, used A&C to shield himself, commingled funds, and otherwise used A&C for his personal benefit depending on the situation. Taken as true, the complaint sufficiently alleges Mullin is the equitable owner of A&C.

### C.    Counts 3, 4, and 5: Fraud, Constructive Fraud, and Conspiracy to Defraud

Mullin argues Twete's fraud claims fail to state with particularity the circumstances constituting fraud as required under Rule 9(b). The Court disagrees. The complaint lays out in some detail what Mullin allegedly did and said, why he did and said it, and why it is false. Using specific examples from tax records, loan applications, sworn testimony from multiple cases, and sworn testimony from Mullin's own accountant, the complaint explains that for years Mullin held himself out as the sole owner of A&C. Then, when A&C, as an asset of Mullin, was under threat to satisfy a judgment against Mullin, Mullin suddenly and for the first time claimed he had given ownership of A&C to his son back in 2008.

7

Put plainly, the complaint alleges Mullin lied that he transferred ownership to his son in 2008 in order to protect A&C and its assets from satisfying the judgment against Mullin.   The allegations are more than "specific enough" to give Mullin "notice of the particular misconduct" so that he "can defend against the charge and not just deny" that he has done anything wrong. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

**D.     Count 6: Fraudulent transfer**

Under Montana Code Annotated § 31-2-333, a transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

> (a) with actual intent to hinder, delay, or defraud any creditor of the debtor; or
> (b) without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor:
>> (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>> (ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

Here, the complaint alleges Fraudulent Transfer as an alternative.  The complaint alleges that if Mullin actually did transfer his ownership in A&C to his son, depending on when the transfer actually occurred, it was a fraudulent transfer because it was done with the intent to defraud Twete as a potential creditor or was

8

done without receiving equivalent value and Mullin knew or should have known he was about to incur debts beyond his ability to pay.

While it's questionable whether a 2008 transfer would constitute a fraudulent transfer as to Twete given Twete didn't convey the farm to Mullin until 2012, Twete argues the transfer would be fraudulent if it occurred when Mullin knew or should've known he was going to incur a debt to Twete, which could have been as early as 2013 or 2014. Twete argues he is entitled to plead this alternative theory. The Court agrees. If the transfer occurred around 2013 or 2014 with either the intent to defraud Twete or without receiving equivalent value when Mullin knew or should've known he would incur a debt to Twete, it would be a fraudulent transfer.

## IV.    Conclusion and order

The defendants' motion to dismiss (Doc. 10) is denied.

DATED this ___28___$^{th}$ day of May, 2020.

SUSAN P. WATTERS
United States District Judge

9